# Richmond.

## SCHMELZ BROS. V. RIX & BENTLEY.

### JANUARY 20, 1898.

#### Absent, Cardwell, J.

1. APPEAL AND ERROR—*Amount in Controversy.*—The amount in controversy on this appeal, which is from a decree perpetually enjoining a sale under a deed of trust given to secure notes amounting to $500, from which a usurious discount of $52 had been deducted, is the whole sum secured.

2. NEGOTIABLE PAPER—*Changes—Alterations.*—The maker of a negotiable note who consents to a change of the date cannot thereafter complain of such change as an alteration.

3. DEED OF TRUST TO SECURE DEBTS—*Case in Judgment.*—The evidence in the case in judgment shows that the deed of trust was made by the makers of two notes to secure the payment of the notes themselves, and not merely as security for the endorsers thereof.

Appeal from a decree of the Circuit Court of the city of Newport News pronounced March 11, 1896, in a suit in chancery wherein the appellees were the complainants, and the appellants and others were the defendants.

*Reversed.*

The bill in this cause was filed by the appellees Rix & Bentley against the appellants, Schmelz Brothers, and one Phil. St. George Wilcox, trustee. The bill charged that on the 13th of November, 1893, Rix & Bentley had obtained a loan of $500 from Schmelz Brothers, bankers, in the city of Newport News, and had, as security therefor, given two notes, one for the sum of $300, and the other for the sum of $200, each endorsed by E. W. Johnson and W. Scott Boyenton for the accommodation of the

makers; that in order to indemnify their endorser, E. W. Johnson, and solely for that purpose, they executed a deed of trust on certain personal property; that each of said notes was dated November 13, 1893, but after they were received by Schmelz Brothers, and before their maturity they were changed in a material respect by Schmelz Brothers, without the knowledge or consent of either the makers or endorsers, and that thereby said notes were rendered null and void; but that even if said notes were not rendered wholly void by the charge aforesaid, Schmelz Brothers had charged them a higher rate of interest than six *per cent.*, and the said notes were founded on a usurious consideration. They further charge that Schmelz Brothers knew nothing about the deed of trust at the time it was given, or for some time thereafter, and that it was intended solely as a security for their endorser, and not for the benefit of Schmelz Brothers. They charge, however, that Schmelz Brothers have directed a sale by the trustee under said deed of trust. The prayer of the bill is that Schmelz Brothers be required to discover the consideration of said notes, and the amount of money really loaned the complainants, and that the said Schmelz Brothers, the trustee, and all others concerned be enjoined and restrained from selling under the deed of trust aforesaid, and for general relief. Schmelz Brothers, in their answer to the bill, admit that the loan was made at a greater rate of interest than six per cent.; that the two notes above mentioned were renewals of a previous note for $500, endorsed by the same endorsers, and that the discount received by them on the original note was $26, and on the renewals $26, and that the actual amount of principal money now due by Rix & Bentley is $448. They deny that the change in said notes was made without the knowledge or consent of the makers, but aver that it was made in the presence and with the consent of A. F. Rix, the managing member of the firm of Rix & Bentley. They admit that the change was not made with the consent of the endorsers, and that they are therefore released, but they insist that the notes are valid securities as against the

makers, and that the deed of trust operates as a security for said notes, at least to the extent of the amount actually loaned.    The other evidence sufficiently appears in the opinion of the court.

*Thomas Tabb* and *Francis F. Causey*, for the appellants.

*W. J. Nelms, R. G. Bickford* and *G. N. Wise*, for the appellees.

Keith, P., delivered the opinion of the court.

This controversy originated in a bill of injunction filed by Rix & Bentley in the Circuit Court for the city of Newport News, to which bill Schmelz Brothers and Wilcox, trustee, were made parties defendants.    The pleadings and proof show the following case:

Schmelz Brothers discounted a negotiable note for Rix & Bentley for the sum of $500, payable at their banking house, in Newport News, Va., on the first day of November, 1893.    This note was endorsed by E. W. Johnson and W. Scott Boyenton, and was duly protested for non-payment.    Rix, the managing partner of Rix & Bentley, applied for a renewal of this note which was agreed to, and, on the thirteenth of November, he came to the banking house of Schmelz Brothers with two notes, each bearing date on that day, and endorsed by Johnson and Boyenton, one for $300 payable three months after date, and the other for $200 payable six months after date.    The sole purpose of the execution of the last notes was to take up the protested note of $500 upon which appeared the names of all those upon the new notes.    When the notes were offered to Schmelz Brothers, the teller of the bank discovered that they bore date on the thirteenth instead of the first day of November, the date of maturity of the $500 note, and, after some hesitation upon the part of Geo. A. Schmelz, who conducted the negotiation upon the part of the bank, the date of the two notes was changed from the thir-

teenth to the first day of November. This change, the evidence sufficiently shows, was made with the knowledge and acquiescence of Rix. To secure these notes a deed of trust was given by Rix & Bentley conveying certain personal property to Wilcox, trustee, "in trust to secure the payment of two promissory negotiable notes made by Rix & Bentley, payable to the order of E. W. Johnson, at the banking house of Schmelz Brothers, Newport News, Va., each bearing date the 13th of November, 1893, one for $300, payable three months after date, and another for $200, payable six months after date." When these notes became due default was made in their payment, and the trustee, at the instance of the creditors secured, advertised the property for sale. Thereupon Rix & Bentley sued out an injunction, and the Circuit Court of Newport News having entered a decree perpetuating it, Schmelz Brothers applied for and obtained an appeal to this court.

The first question which arises is upon a motion of the appellee to dismiss the appeal upon the ground that less than $500 is involved. In this view we cannot concur. The bill prays an injunction to the execution of a deed of trust given to secure two negotiable notes amounting to the sum of $500. This injunction was granted and perpetuated. It placed the whole sum secured in controversy, and, by the decree, the appellants were deprived of a security for the notes due them. The motion to dismiss must, therefore, be overruled.

Many interesting, and some doubtful, questions were discussed by counsel, but in our view of the case it may be disposed of upon well settled principles of law. It is needless to enter the field of controversy to which we are invited as to the affect of alterations of a written instrument, for, as we have already said, the alteration here complained of was made with the knowledge and acquiescence of the makers of the note. Said a distinguished writer upon negotiable instruments: "It is quite obvious that when the parties to a bill or note agree to a change of any of its terms, they cannot complain of any such change as an altera-

tion.    They have as much right to change as to make the contract."    Dan. on Neg. Ins. (4 ed.) sec. 1401.

We are of opinion that, under the circumstances disclosed in this record, Rix & Bentley are bound upon the notes executed by them, one for $200 and the other for $300, dated originally the 13th, and subsequently changed to the 1st day of November, 1893.

It is claimed upon the part of the appellees that the deed of trust to Wilcox was a mere indemnity to the endorser, Johnson, and that he, having incurred no liability by reason of said note, the deed never became operative; and in support of this proposition *Hopewell* v. *Cumberland Bank*, 10 Leigh 214, is cited.

But the contention of the appellees proceeds upon a false premise.    The deed in question is not a deed for the indemnity of the surety.    It conveys property to a trustee, and pledges it for the payment of the debt secured.    The quotation already made from the instrument in question would seem to be conclusive of this propositon: "In trust to secure the payment of two promissory negotiable notes," and then proceeds with a description of the notes themselves.

Further on, in prescribing the duties of the trustee in case of sale, he is required to sell "for cash as to so much of the proceeds as may be necessary to defray the expenses of executing this trust   *   *   *   *   and to discharge the amount of money then payable upon said notes," concluding with the provision: "If no default shall be made in the payment of either of the above mentioned notes, or insurance premiums, then, on the request of the parties of the first part, a good and sufficient deed of release shall be executed to them upon their own proper costs and charges."    It is true, that the deed does say that the sale shall be made when Johnson, the endorser, his executors, administrators, or assigns, shall so require, and in the covenant for the payment of taxes, assessments, dues, and charges upon the property, it is declared that these duties are imposed for the "further protection of either E. W. Johnson or his assigns"; but, looking

to the whole deed, to the fact that Rix & Bentley owed a debt to Schmelz Bros., and that the effect of the deed was to appropriate their property to the payment of their just debt, we have no doubt that it is to be construed as a security for the debt itself, and not as an indemnity to the endorser, which would enure to the benefit of the creditor only, in the event that loss or damage befell the endorser.

For the reasons given, we are of opinion that the Circuit Court erred in perpetuating the injunction, and its decree must be reversed.

*Reversed.*